UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

NELLO JAMES FRANCIS,                )
                                    )
        Plaintiff,                  )         Civil Action No. 07-240-ART
                                    )
v.                                  )
                                    )         **MEMORANDUM OPINION &**
ROBERT MARSHALL, et al.,            )              **ORDER**
                                    )
        Defendants.                 )
                                    )

                    ***   ***   ***   ***

        The defendants filed a motion for summary judgment, R. 21, to which the plaintiff

responded, R. 26, and the defendants replied, R. 31.  The plaintiff filed a cross-motion for partial

summary judgment, R. 27, to which the defendants responded, R. 32, and the plaintiff replied,

R. 36.  For the reasons provided below, the defendants' motion is granted in part and denied in

part, and the plaintiff's cross-motion is denied.

                            **BACKGROUND**

        The facts of this case are as follows, with the disputes noted:

        On March 1, 1999, Floyd County, Kentucky, hired the plaintiff, Nello J. Francis, to be a

park worker.  *See* R. 21, Ex. A at 1 ("Marshall Aff.").  Technically, a golf course in Allen,

Kentucky employed Francis.  *Id.*  However, from the middle of 2005 until the last day of his

employment on December 31, 2006, Francis actually oversaw a county park in Garrett, Kentucky.

*Id.*; R. 28 at 34 ("Francis Dep."). Francis performed general maintenance at the park such as upgrading and improving concession stands. Francis Dep. at 29-31.

In 2006, the plaintiff's son, James Francis, was running for a state representative seat against Brandon Spencer. R. 21, Ex. B at 1 ("James Francis Aff."). The defendant, Robert Marshall, supported Spencer and Francis supported his son. *Id.* Before the primary election of 2006, Francis's son spoke with Marshall to ensure that there would be no retaliation for Francis's support of his son. *Id.* Marshall assured him that Francis's job would not be affected because of the state representative election. *Id.* The defendants dispute whether Marshall assured Francis's son that Francis would maintain his job under any circumstance. R. 31 at 3. There is evidence that Marshall, at a minimum, campaigned on behalf of Spencer. *See* R. 26, Ex. 1 ("Ritchie Aff.").

Before taking the office of County Judge Executive, Marshall reviewed all Floyd County positions, including Francis's, to eliminate the positions that were unnecessary as part of a reduction in work force. R. 29 at 79-80 ("Marshall Dep."); Marshall Aff. at 1. Marshall determined that Francis's position would not be re-funded and should be eliminated because it was unnecessary. Marshall Aff. at 2; Marshall Dep. at 79-80. In mid-December 2006, Marshall informed Francis that he would not be re-hired. Francis Dep. at 34-35. On December 31, 2006, Francis's position was not re-funded and was eliminated. Marshall Aff. at 2. Other positions were also eliminated, including those filled with people younger than Francis. *Id.*

On January 1, 2007, Marshall took the office of County Judge Executive. Marshall Dep. at 79. Pursuant to the Floyd County Fiscal Court's longstanding practice, no Floyd County

2

employee was employed at 12:00 a.m. on January 1, 2007.  *Id*. at 16-17, 19.  Thus, the Fiscal Court had to re-hire its employees.  *Id*. at 17.  Marshall called a special meeting of the Fiscal Court on January 1, 2007, to re-hire its employees.  *Id*. at 16.  He testified that he notified the local newspaper, the Floyd County Times, of the special meeting.  *Id*. at 22.  The parties dispute whether anything was printed in the paper.  Francis points out that the defendants failed to cite any evidence to show that the special meeting was announced in the newspaper.  R. 26 at 3.  No members of the general public attended the meeting.  Marshall Dep. at 24.

Francis was the only full-time park worker that was not re-hired in Marshall's administration.  *Id*. at 27.  Marshall testified that poor work performance was part of the reason that his administration abolished Francis's position.  *Id*. at 79.  The administration did not offer Francis a hearing before it eliminated the position.  *Id*. at 38.

On December 5, 2007, Francis filed this action against Marshall, in his individual and official capacities, and the Floyd County Fiscal Court.  *See* R. 1.  Francis alleges, under 42 U.S.C. § 1983, that his dismissal was unlawful patronage that violated the First Amendment.  *See id*. He claimed that Marshall and unidentified others violated 42 U.S.C. § 1985 because they conspired to retaliate against Francis for supporting a political adversary of Marshall's.  *See id*. He also asserted state law claims against the defendants for age discrimination, wage and hour violations, and wrongful discharge.  *See id*.

## DISCUSSION

In Francis's motion for partial summary judgment, he claims he pled a Fourteenth Amendment due process claim in his complaint.  *See* R. 27.  He is incorrect.  Francis's complaint

only alleges that the defendants violated his First Amendment rights and various state laws. *See*

R. 1. The first time Francis alleged his due process claim was at the summary judgment stage.

That is far too late. Once a case has progressed to the summary judgment stage, "the liberal

pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *Tucker v.*

*Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)); *id.* (citing 10A

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723

(3d ed. Supp. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first

time in response to the opposing party's summary judgment motion. At the summary judgment

stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in

accordance with Rule 15(a).")). Francis failed to amend his complaint in accordance with Fed.

R. Civ. P. 15(a) and, therefore, cannot allege a due process claim in a response to the defendants'

motion for summary judgment or in a cross-motion for partial summary judgment.

To permit a plaintiff to bring a claim at the summary judgment stage would subject the

defendants to unfair surprise. *Tucker*, 407 F.3d at 788 (citations omitted). Such unfair surprise

is apparent here since the defendants' otherwise thorough motion for summary judgment makes

no mention of a due process claim. The defendants filed their motion on September 25, 2009,

to meet the dispositive motions deadline of September 26, 2009. R. 20. In response, Francis

relied on depositions taken on September 30, 2009, roughly three months after the discovery

cutoff, to support his due process claim. *See* R. 28 and 29. This evidence came extremely late

in the litigation. *Cf. Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009) (stating that

4

where the complaint is *not clear* the defendant may become aware of a claim during the course of the proceedings (citing *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008))).  Evidence discovered both after the discovery cutoff and after the dispositive motions deadline cannot fairly put the defendants on notice of a due process claim.

Francis cites three sections of the complaint to support his argument that he properly pled a due process claim.  But none of those sections put the defendants on notice of a due process claim.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (stating that notice pleading requires the defendants get notice of what the claim is and the grounds upon which the claim rests)).  First, Francis points out that his complaint mentions the Fourteenth Amendment twice.  *See* R. 1 ¶¶ 1, 12.  The first reference merely states that the Court has federal question jurisdiction because the case involves the First and Fourteenth Amendments.  *Id.* ¶ 1.  That does not put the defendants on notice that Francis is asserting a due process claim.  It only informs the defendants that Francis's claims involve the Fourteenth Amendment in some way.  The second reference states:

> The actions of the Defendant constitute a wrongful and retaliatory discharge of the Plaintiff in violation of his First and Fourteenth Amendment rights under the United States Constitution to the free exercise of political patronage, political association, and freedom of speech.

R. 1 ¶ 12.  That reference puts the defendants on notice that:  (1) Francis alleges that they violated his First Amendment rights of "free exercise of political patronage, political association, and freedom of speech," and (2) the First Amendment applies to state action via the Fourteenth Amendment.  *See Perry v. McGinnis*, 209 F.3d 597, 603 (6th Cir. 2000).  But this part of the complaint does not put the defendants on notice that the dismissal was a due process violation

5

since it makes no such allegation.  While Francis did not need to use the words due process in his complaint—although it would have been advisable—he needed to put the defendants on notice of such a claim.  *See* Fed. R. Civ. P. 8(a)(2).

In addition, Francis argues that the complaint alleges the grounds upon which his due process claim rests.  He points to the following paragraph in the complaint:

> On December 31, 2006, the Plaintiff was notified by Defendant Marshall that he was terminated from position due to a "position elimination."  This termination of the Plaintiff was clearly pre-textual as he had more seniority than his counterparts, there are no meeting minutes of hearing regarding the dismissal of the Plaintiff, more park rangers were added to Floyd County employment shortly thereafter and even though Plaintiff's position was allegedly eliminated for budgetary reasons, the employment of Defendant County increased by 16 since his dismissal.

R. 1 ¶ 9.  But that paragraph relates to Marshall's discrimination claims—not a due process claim.  There, Francis anticipates and rebuts an argument from Marshall that his decision not to re-hire Francis was for nondiscriminatory reasons.  One allegation in that paragraph might support a due process claim.  Francis alleges that there were "no meeting minutes of [the] hearing regarding the dismissal of the Plaintiff."  *Id.*  He never, however, ties this fact to a due process violation.  For example, he does not follow this up with a simple statement saying he was denied a hearing which he was entitled to have, and thus, the defendants violated his due process rights.  Such an allegation would have put the defendants on notice of a due process claim.  Instead, now Francis is trying to pull this needle out of the haystack and claim that he has pled a due process violation.  That is not notice pleading.  *See Swierkiewicz*, 534 U.S. at 512 (citing *Conley*, 355 U.S. at 47); *see also Ruffin v. Nicely,* 183 F. App'x 505, 510 (6th Cir. 2006) (dismissing due process claim because the plaintiff "failed to identify any property interests arising from

6

independent sources of law for the Federal Constitution to protect."). Francis failed to allege the grounds upon which his due process claim rests and cannot do so now.

Francis also looks to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), to support his position that he adequately alleged a due process claim. R. 36 at 2-3. Francis contends that as long as the facts are in the complaint the claim has been adequately plead. *Id.* This argument fails since, as mentioned, he did not sufficiently plead the facts of his due process claim.

In passing, Francis seems to argue that a violation of his First Amendment rights is by definition a violation of the right to due process under the Fourteenth Amendment. He notes that the Supreme Court has said "it is possible that some of the personal rights safeguarded by the first eight Amendments against national action may also be safeguarded against state action, because a denial of them would be a denial of due process of law." *Twining v. New Jersey*, 211 U.S. 78, 99 (1908) (citing *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226 (1897)), *overruled in part by Malloy v. Hogan*, 378 U.S. 1, 5 (1964). *Twining* is distinguishable. In that case, there was a due process implication in the First Amendment that is simply not present in Francis's political patronage claims. In *Twining*, the criminal defendants alleged that a jury instruction compelled self-incrimination. *Id.* Further, Francis quotes *Twining* out of context since the court there was deciding whether the plaintiffs could bring a Fifth Amendment claim for the state action. Here, there is no such question presented because under 42 U.S.C. § 1983 Francis has a right to bring constitutional claims against state actors.

Because Francis raised his due process claim too late, his cross-motion for partial summary judgment, R. 27, is denied.

7

## I.  Summary Judgement Standard

While there is no due process claim before the Court, there are several other claims that both parties agree Francis has asserted and for which the defendants seek summary judgment. Summary judgment is appropriate for the defendants where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The defendants "[bear] the initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The defendants may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of Francis's claim.  *Id.* at 322-25.

Once the defendants meet this burden, the burden shifts and Francis "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Moreover, there must be evidence on which the jury could reasonably find for Francis.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In considering these motions for summary judgment, the Court must view the facts and draw all inferences therefrom in a light most favorable to Francis. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## II.  Individual Capacity Political Patronage Claims

Qualified immunity bars the individual capacity political patronage claims Francis asserts against Marshall.  To determine whether qualified immunity applies, a court must decide whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  In the instant case, Francis has not shown that Marshall violated a constitutional right.  To make a prima facie case, Francis needed to present evidence that his support of his son's election was a "substantial" or "motivating" factor in Marshall's decision not to re-hire him.  He did not meet his burden.  As a result, Marshall is entitled to qualified immunity.

Francis alleges that he was terminated because he supported his son against a candidate that Marshall supported.  R. 1 at 3.  Marshall cannot terminate Francis, a non-policymaking employee, solely on the grounds of political affiliation, since such terminations "severely restrict political belief and association." *Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997) (quoting *Elrod v. Burns*, 427 U.S. 347, 372 (1976)).  To establish a prima facie case of patronage dismissal in violation of Francis's First Amendment rights, Francis must show the decision not to re-hire him was because of his political affiliation. *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977)).  In particular, Francis must show that his political affiliation was a "substantial" or "motivating" factor behind the decision to establish the required causal connection. *Id.* (citing *Mt. Healthy*, 429 U.S. at 287).  If Francis meets this burden, then

Marshall must prove that the decision would have been the same without political considerations. *Id.* (citing *Mt. Healthy*, 429 U.S. at 287).

Francis's claim fails because he has not shown that political affiliation was a substantial or motivating factor. The claim also fails because Marshall has shown that Francis would not have been re-hired, notwithstanding the political considerations.

The political affiliation at issue here is Francis's support of his son's candidacy for state representative. James Francis Aff. at 1. Marshall campaigned for Francis's son's opponent in the election, Brandon Spencer. Ritchie Aff. at 1. Francis's son met with Marshall to ensure that the election would not affect Francis's job with Floyd County. James Francis Aff. at 2. This fact demonstrates that Marshall knew Francis supported his son. While the parties dispute whether Marshall guaranteed that Francis would be re-hired or merely assured him that the election would not impact his job status, this factual distinction is immaterial. In either case, the meeting with Marshall does nothing to show that the election was a substantial or motivating factor in the decision not to re-hire Francis. The meeting is only relevant because it shows that Marshall was aware that Francis supported his son over Spencer.

The best evidence that Francis cites is the fact that he held the only full-time position that was eliminated when Marshall took office. Marshall Dep. at 26-27. But this fact alone or combined with the other evidence cited does not show that Francis's support of his son was a substantial or motivating reason for Marshall's decision. Francis cites *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000), to support his position. *Lucas* is distinguishable from the instant case. In that case, there was evidence that campaign contributors and political supporters

10

received benefits that non-contributors and non-supporters did not. *Id.* at 976. That is precisely the type of circumstantial evidence that Francis did *not* present. Specifically, Francis failed to present evidence that the full-time workers who were re-hired did not have a political affiliation with Francis's son.

Francis also asserts that someone must be doing the work he did as evidence that political affiliation was a factor in the decision not to re-hire him. R. 26 at 10. However, there is no evidence that anyone took over his position. Instead, Francis testified that he did not know of anyone doing the work he performed at Garrett Park. Francis Dep. at 34, 64. Francis mentions that after he was let go some younger workers were hired. R. 26 at 4. But he does not cite facts to show these people were performing the work that he did or had a different political affiliation than himself. Thus, there is not any evidence presented to show that political affiliation was the reason for him not getting re-hired or the others getting re-hired.

The plaintiff asserts that the "illegal 'reorganization'" is evidence that Francis was let go because he was "'politically unfriendly.'" R. 26 at 10. It is unclear what Francis is referring to when he says "illegal 'reorganization.'" Presumably, Francis is arguing that the re-hiring was illegal because his due process rights were violated. However, the alleged due process violation does not in any way show that Francis's political affiliation was the reason for his termination. Thus, this argument fails.

Francis suggests that the fact that Marshall told a voter, Sheila Ritchie, that he and Spencer, Francis's son's opponent, were "running as a team" is evidence that Francis was not re-

hired for political reasons.[1]   *See* Ritchie Aff.   This is not evidence that Francis's political affiliation was the basis for the decision not to re-hire.  Rather, this is only evidence that Marshall campaigned for Spencer, which is undisputed.

Francis points out that at the January 1, 2007, meeting Donald R. Daniels asked Marshall about Francis's continued employment with Floyd County.  R. 26, Ex. 4 ("Daniels Aff.").  Marshall allegedly replied that he had "taken care of that."  *Id.* at 1.  When Daniels asked why Francis was not on the list of employees, Marshall again replied that he had "taken care of that."  *Id.*  Those statements do not show that Francis's political affiliation was a substantial or motivating factor in Marshall's decision to not re-hire Francis.  Consequently, those statements are not relevant.

None of the evidence cited helps Francis establish a prima facie case for political patronage.  Simply put, Francis did not present any evidence to show that political affiliation was a substantial or motivating factor for Marshall's decision.  *See Kreuzer*, 128 F.3d at 363 (citing *Mt. Healthy*, 429 U.S. at 287).

Even if Francis had met his initial burden, Marshall sufficiently proved that the decision would have been the same without political considerations.  *Id.* (citing *Mt. Healthy*, 429 U.S. at 287).  Marshall considered Francis's position and it was deemed unnecessary.  Marshall Aff. at 2.  In fact, Francis was performing a job inconsistent with his job title.  *Id.*  The plaintiff also admitted that he did not know whether anyone was performing the work that he had done.

---

[1]      The defendants objected to this evidence as hearsay.  R. 31 at 3.  Since Marshall's statement is an admission by a party-opponent, the statement is not hearsay.  Fed. R. Evid. 801(d)(2).  The statement is admissible evidence.

Francis Dep. at 34, 64.  Marshall was unhappy with how Garrett Park was maintained.  Marshall

Dep. at 79-80.   This evidence indicates Marshall's decision was a result of business

considerations—not political ones.

Francis contends that Marshall violated his First Amendment rights because the stated

business or policy reasons for the position elimination were a "subterfuge for its actual

motivation, the desire to eliminate politically unfriendly employees."  R. 26 at 9 (quoting *Kreuzer*,

128 F.3d at 363).  Francis is correct that such a situation can give rise to an actionable claim.  He

cites no facts, however, to support such a claim.  Without facts, his claim cannot survive.

Francis did not establish that Marshall violated any of his First Amendment rights and,

consequently, he is entitled to qualified immunity.  The Court need not reach Francis's arguments

that his rights were clearly established.  R. 26 at 13-15.

### III.  Official Capacity Political Patronage Claims

Francis asserted political patronage claims against Marshall in his official capacity.  These

claims are equivalent of a suit against the entity on whose behalf Marshall acted—the Floyd

County Fiscal Court.  *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).  Thus, the

claims against the Floyd County Fiscal Court and Marshall in his official capacity are considered

together and they are referred to collectively as the "County Defendants."

Francis failed to show that Marshall or any other official violated the Constitution.  Thus,

the official capacity claims asserted against the County Defendants under § 1983 must be

dismissed.  *See Bowman v. Corrs. Corp. of America*, 350 F.3d 537, 545-46 (6th Cir. 2003)

(holding a county or municipality may not be held liable under § 1983 for a policy or custom if

the plaintiff fails to establish a constitutional violation by one of its officials).  The claims are also dismissed because Francis has not shown that the County Defendant put in place a policy or custom that was a "moving force" behind the alleged constitutional violations.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "[A] municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question."  *Miller v. Calhoun County*, 408 F.3d 804, 813 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694).  A "municipality cannot be liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691.  While the defendants pointed this legal issue out to Francis, *see* R. 21 at 5-6; R. 31 at 16-17, Francis failed to cite any evidence that an official policy or custom was a moving force behind the political patronage alleged.  *See Anderson,* 477 U.S. 242 at 252.

Instead, Francis responds that he is bringing a claim for prospective injunctive relief under the doctrine outlined in *Ex parte Young*, 209 U.S. 123 (1908).  R. 26 at 16.  This argument fails for two reasons.  First, there is no mention of a request for injunctive relief in the plaintiff's complaint.  *See* R. 1.  Like the alleged due process claim previously addressed, a claim seeking injunctive relief is not before the Court since the defendants have no notice of such a claim.  Second, *Ex parte Young* is a rare exception to the Eleventh Amendment for claims brought against state officials.  *See Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 304-05 n.4 (6th Cir. 2009).  Here, the claims only involve county officials (as opposed to state officials), and thus, they can be sued under § 1983.  Francis does not need *Ex parte Young* to assert his claims.  That doctrine is inapplicable.

14

## IV.  Conspiracy Claim

Francis's conspiracy claim under 42 U.S.C. § 1985 fails because, for the reasons stated above, he did not establish that the defendants violated any of Francis's First Amendment rights. In his complaint, Francis alleges that "Defendant Marshall and unknown persons, conspired and retaliated against the Plaintiff for associating with . . . Defendant Marshall's political adversaries." R. 1 ¶ 19.  As part of this claim, Francis had to show that there was evidence that the defendants injured or deprived him of a civil right.  *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citations omitted).  He did not.  Thus, the claim that the defendants conspired to violate Francis's First Amendment rights must be dismissed.

## V.  Age Discrimination Claim

Francis claims the defendants discriminated against him based on his age–he is 89 years old–in violation of Ky. Rev. Stat. § 344, et seq.  This claim also fails.  In an age discrimination case, the plaintiff must first establish a prima facie case of age discrimination using the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 531 (6th Cir. 2006).[2]  To do so, Francis must show that he:  (1) is a member of a protected class, (2) was qualified for his position, (3) suffered an adverse employment decision, and (4) was treated differently than similarly situated, non-protected

---

[2]    Francis's age discrimination claim was brought under Kentucky law.  Claims brought under Kentucky state law are "analyzed in the same manner" as federal age discrimination claims. *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 393 (6th Cir. 2008) (quoting *Williams*, 161 F. App'x at 531 & n.3); *see also Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984) ("The Kentucky age discrimination statute is specially modeled after the Federal law. Consequently, in this particular area we must consider the way the Federal act has been interpreted." (citation omitted)).

employees. *Id.* at 532. Since Francis's termination was part of a "reduction in force," he must also "produce 'additional direct, circumstantial or statistical evidence that age was a factor in his termination.'" *Id.* at 534 (quoting *LaGrant v. Gulf Western Mfg. Co.*, 748 F.2d 1087, 1091 (6th Cir. 1984)). Francis's prima facie case fails because he did not provide additional evidence that age was a factor in his termination.

When there is a corporate reorganization or reduction in force, a plaintiff must "show that he was replaced by a younger person." *LaGrant*, 748 F.2d at 1090. Here, Marshall elected not to re-hire Francis, a full-time worker, as well as some other seasonal workers on January 1, 2007. Marshall Aff. at 1-2. Francis has not presented a single piece of evidence to establish that someone (younger, older, or the same age) was doing the work he did. *See* Francis Dep. at 34, 64. Since Francis cannot show that someone younger is doing the work he once did, his claim cannot survive summary judgment. *See LaGrant*, 748 F.2d at 1090.

Francis also argues that the work force increased following his position being eliminated, and thus, there is a material issue of fact whether there was a reduction in force. R. 26 at 11. This argument fails. The parties agree that Floyd County had 126 employees on December 31, 2006, the day Francis's position was eliminated, and 142 employees on September 30, 2009, the date Marshall was deposed, September 30, 2009.[3]  Marshall Dep. at 67; R. 26 at 4; R. 31 at 4.

---

[3]      The deposition transcript cited for support on this point states that Floyd County had 142 employees on the date that Marshall had to respond to an EEOC complaint—not the date that Marshall was deposed. Marshall Dep. at 67. The defendants do not dispute that Floyd County had 142 employees on the date of his deposition, even though no citation to the record supports this conclusion. The cited evidence does not state when Marshall had to respond to the EEOC complaint. Since it is immaterial whether Floyd County had 142 employees, the Court will presume for the purposes of this motion that Floyd County had 142 employees on the date of

Francis argues based on this increase that no reduction in force took place.  However, a reduction in force occurs when "business considerations cause an employer to eliminate one or more positions within the company." *Williams*, 161 F. App'x at 534 (quoting *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 895 (6th Cir. 1997)).  The defendants have evidence that they eliminated Francis's position because of business considerations.  Specifically, Marshall was unhappy with how Garrett Park was maintained and Francis's position was unnecessary.  Marshall Dep. at 79-80; Marshall Aff. at 2.  Therefore, this reduction in force meets the legal standard for a reduction in force.  The fact that after the reduction in force (which took place on January 1, 2007) Floyd County decided to hire individuals over the next thirty-three months does not rebut the fact that a reduction in force took place on January 1, 2007.  That fact only shows that over the following thirty-three months the Floyd County work force grew.  The increase in the workforce is also irrelevant since the additional workers were seasonal—not full-time workers like Francis—and none did the maintenance that Francis performed at Garrett Park.  Marshall Dep. at 63-67; Francis Dep. at 34, 64.  Hirings that occur after a reduction in force due to "changed circumstances" do not affect the conclusion that a reduction in force took place earlier.  *Williams*, 161 F. App'x at 534-35.

Even if Francis had established a prima facie case of age discrimination, his claim still fails because the defendants have given nondiscriminatory reasons for the reduction in force and Francis has not shown that those reasons were pretextual.  *See id.* at 532.  The defendants provided three nondiscriminatory reasons:   (1) Marshall was unhappy with how Francis

───────────────

Marshall's deposition.

17

maintained Garrett Park, (2) Francis's position was unnecessary, and (3) Francis was performing work unrelated to his job title.  Marshall Dep. at 79-80; Marshall Aff. at 2.  To show these reasons were pretextual, Francis contends that the defendants hired four new employees on March 20, 2007, (roughly three months after Francis was terminated) and hired back two younger, seasonal employees after the reduction in force.  R. 26, Ex. 3; Marshall Dep. at 34.  This response fails to show that the reasons were pretextual.  First, Francis admitted that he did not know whether anyone has performed the work that he did at Garrett Park.  Francis Dep. at 34, 64.  In addition, the hires and re-hires were seasonal grass cutters and pool operators—not jobs that Francis, a full-time employee, performed.  Marshall Aff. at 2; Marshall Dep. at 34-37, 63-65.  Francis has not presented evidence that he could have performed these jobs if offered them.  None of the hires or re-hires worked at Garrett Park where Francis did.  *Id.*  Thus, Francis has not presented evidence to create a material issue of fact that the nondiscriminatory reasons were pretextual.

Francis contends that this case is analogous to *Childer Oil Co., Inc. v. Adkins*, 256 S.W.3d 19, 26 (Ky. 2008), where the Kentucky Supreme Court found there was enough evidence of pretext to deny a directed verdict.  *Adkins* is distinguishable from the instant case.  There, the employer told the plaintiff that the business was closing and the plaintiff's services as a cashier would not be needed.  *Id.*  Eleven days before the plaintiff was discharged, the employer hired a younger employer to do the same job.  *Id.* at 25.  After the plaintiff's discharge, the store re-opened and at least five other younger employers were hired.  *Id.*  Here, the facts are materially different.  Unlike in *Adkins*, there is no evidence that the defendants hired anyone to do the work

18

that Francis did at Garrett Park.  Also, Francis was a full-time employee and the new hires were seasonal employees.  Francis has not presented any evidence that he was qualified for the work that the others were hired to do which included pool maintenance and grass cutting.  In *Adkins,* the plaintiff was a more experienced cashier than her younger replacements.  As a result, Francis failed to show that Marshall's decision not to re-hire him for business reasons was pretextual.  His claim for age discrimination fails on these grounds as well and is dismissed.

## VI.  Wage and Hour Violations Claim

Francis alleges that the defendants violated Ky. Rev. Stats. §§ 337.055 and 337.020 because they did not provide him health insurance, life insurance, and other benefits that they provided to his "counterparts."  R. 1 ¶¶ 30-32; *see also* R. 26 at 13.  This claim fails because the benefits that Francis seeks are not "wages" or salary recoverable under §§ 337.055 and 337.020.

Sections 337.055 and 337.020 both allow the recovery of unpaid wages and salary but in different circumstances.  Ky. Rev. Stat. § 337.055 provides a mechanism to recover wages and salary at the time of discharge.  It requires that "[a]ny employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him."  On the other hand, Ky. Rev. Stat. § 337.020 requires the timely payment of wages and salary during employment.  Francis did not seek to recover salary so the question is whether health insurance and life insurance are "wages."  They are not.

Under Chapter 337, "wages" include:

any compensation due to an employee by reason of his employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy.

19

Ky. Rev. Stat. § 337.010(1)(c).  The benefits that Francis seeks are not any of the wages enumerated in § 337.010(1)(c) ("salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses").  In addition, the benefits are not "any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy."  *Id.*  Francis has not presented evidence that the Fiscal Court agreed to provide him health insurance and life insurance benefits or that there was an established policy.[4] He argues that every other full-time employee received health, retirement, and life insurance benefits.  R. 26 at 4, 13.  However, he provides no evidence in support—as he must do at this stage.  There is only evidence that the defendants paid Francis all the wages and benefits owed to him upon his discharge.  Marshall Aff. at 2.

Francis did not receive insurance benefits during the entire length of his employment or upon termination.  *See* Francis Dep. at 32-33.  Francis testified that a previous county judge executive, Paul Hunt Thompson, offered to "pay some of [his health insurance] premiums."  *Id.* at 42.  The Fiscal Court apparently paid three months of Francis's health insurance.  *Id.* at 42-43.  But that alone is not evidence that the Fiscal Court agreed to pay him health insurance or that there was an established policy to pay for such benefits.  Rather, it is evidence that the Fiscal

---

[4]      In passing, Francis's complaint states that, in the alternative to the wage and hour violations, the defendants were "unjustly enriched by not providing the Plaintiff all of the compensation and/or wages and other benefits that he was entitled to as an employee of Floyd County under law."  R. 1 at 6.  While the defendants provide evidence that Francis was fully compensated upon discharge, *see* Marshall Aff. at 2, Francis provides no evidence that the defendants failed to compensate him as required under Kentucky law.  He also makes no mention of this claim in his response.  To the extent that Francis brought an unjust enrichment claim, he did not present any evidence to support such a claim.

Court agreed to pay some of his premiums.  Without evidence of an agreement to pay such benefits or an established policy, Francis cannot recover "any other similar advantages."

Even if there was evidence of an agreement or an established policy, the benefits such as retirement plans, health and disability insurance, and life insurance are not "wages" as a matter of law.  Kentucky courts have long held that such benefits are "fringe benefits"—not wages or salary.  *See Caldwell County Fiscal Court v. Paris*, 945 S.W.2d 952, 954-955 (Ky. Ct. App. 1997).  Though the court in *Caldwell* was interpreting the Kentucky Constitution, the case demonstrates how insurance benefits are generally different from wages and salaries.  The court noted that the Kentucky legislature has passed statutes that consider such benefits to be "fringe benefits"—as opposed to wages or salary.  *Id.* at 954.  Thus, Francis's argument for wage and hour violations fail both as a matter of fact and as a matter of law.

## VII.  Wrongful Discharge Claim

Francis did not respond to the defendants' arguments that the wrongful discharge claims should be dismissed.  The official capacity claims for wrongful discharge must be dismissed because, under Kentucky law, county officials in their official capacity and county fiscal courts enjoy sovereign immunity.  *See Doe v Magoffin County Fiscal Ct.*, 174 F. App'x 962, 971 (6th Cir. 2006) ("Kentucky courts have treated fiscal courts as county governments and thus have permitted fiscal courts to share sovereign immunity with county governments." (citing *Bd. of Claims of Ky. v. Banks*, 31 S.W.3d 436, 439 (Ky. Ct. App. 2000))); *see also Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2002) ("when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity,

21

if any, to which the agency, itself, would be entitled"). As a result, the official capacity claims against Marshall and the Floyd County Fiscal Court for wrongful discharge must be dismissed.

Marshall did not raise a claim of immunity in his individual capacity.[5] Instead, Marshall argues that since §§ 1983 and 1985 gave Francis a civil remedy for his claim he cannot bring a wrongful discharge claim based on public policy. He is incorrect. And, while Francis did not respond to Marshall's argument, the Court has an obligation to ensure the argument to dismiss the claim is correct as a matter of law. *See Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991))).

Under Kentucky law, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Gryzb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) (citations omitted). In *Gryzb*, the defendants showed that the Kentucky statute which declared the alleged conduct unlawful also provided a civil remedy. Thus, the same statute that announced the public policy also gave the plaintiff a civil remedy. On that basis, the Kentucky Supreme Court held that the plaintiff can only pursue the civil remedy that the statute provided—and not a wrongful discharge

---

[5]       An official sued in his or her individual capacity enjoys qualified official immunity, which affords protection for good faith judgment calls made in a legally uncertain environment. *Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 833 (Ky. 2004) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)); *see also Thompson v. Huecker*, 559 S.W.2d 488, 496-97 (Ky. App. 1977) (holding that the re-employment of the plaintiff was a discretionary function).

claim based on public policy. *Gryzb*, 700 S.W.2d at 401. In short, the wrongful discharge claim was unnecessary and redundant to the remedy that the statute provided.

In this case, Francis alleges that Marshall violated the "well-defined public policy" of Kentucky that "employees, and governmental employees especially, should be free to exercise political support and association of the candidate and party of their choice, without fear of reprisal by their employers." R. 1 ¶ 14. Francis claims that this well-defined public policy generally comes from the Kentucky Constitution, Kentucky statute, and other Kentucky law. *Id.* ¶ 15. He does not specify which section of the Constitution or which statute define this public policy. Marshall argues that federal law provides a civil remedy, and thus, *Gryzb* should bar Francis's wrongful discharge claim. This argument fails because whether federal law provides a civil remedy for this claim is irrelevant since Kentucky law is the basis of the wrongful discharge claim. Consequently, since Marshall's legal argument is incorrect, summary judgment must be denied on this claim.

Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over this state law claim. Though all the federal claims are dismissed, the Court has discretion to retain supplemental jurisdiction over the remaining state law claim at this stage. *See Harper v. Autoalliance Int'l Inc.*, 392 F.3d 195, 210-211 (6th Cir. 2004). Judicial economy suggests that the Court should retain jurisdiction over the remaining state law claim. *See Fossyl v. Milligan*, 317 F. App'x 467, 473-74 (6th Cir. 2009) (collecting cases where the district court's decision to exercise supplemental jurisdiction because of judicial economy was affirmed). This case has been pending for over two years, the discovery deadline has passed, and the Court is familiar with

23

the issues in this case.  In some cases, prior decisions render the federal claims "inescapably" frivolous, so there should be no federal jurisdiction over the remaining state law claim.  *See Avila v. Pappas*, ___ F.3d ___, 2010 WL 6102, at *1 (7th Cir. Jan. 4, 2010) (quoting *Hagans v. Lavine*, 415 U.S. 528, 538 (1974)).  This is not one of those cases.  Here, the federal claims were dismissed because Francis did not provide the necessary evidence to survive summary judgment.  This does not mean that Francis's federal claims were "inescapably" frivolous as a matter of law.  While there may be some benefit to having a Kentucky court decide the wrongful discharge claim, that benefit is substantially outweighed by "the commonsense policies of judicial economy."  *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986).  Thus, the Court will exercise supplemental jurisdiction over the state law wrongful discharge claim brought against Marshall in his individual capacity.

## CONCLUSION

Given that the defendants' argument to dismiss Francis's claim against Marshall in his individual capacity for wrongful discharge was incorrect as a matter of law, the defendants' motion will be denied with respect to that claim.  The remaining claims do not contain any genuine issues for trial and, thus, will be dismissed.  Moreover, since Francis did not plead his due process claim in a timely fashion, the Court denies his cross-motion for partial summary judgment.

Accordingly, it is **ORDERED** as follows:

(1)    The defendants' motion for summary judgment, R. 21, is **GRANTED IN PART**

and **DENIED IN PART**.  The defendants' motion with respect to the wrongful

discharge claim asserted against Marshall in his individual capacity is **DENIED**.

The remainder of the defendants' motion is **GRANTED**.  Thus, the remainder of

the claims are **DISMISSED WITH PREJUDICE**.

(2)    Since all the claims asserted against the Floyd County Fiscal Court have been

dismissed, the Floyd County Fiscal Court is **TERMINATED** as a party to this

litigation.

(3)    Francis's cross-motion for partial summary judgment, R. 27, is **DENIED**.

(4)    The parties' joint motion to continue the pretrial conference, R. 37, is

**GRANTED**.  Accordingly, the final pretrial conference set for February 16, 2010,

is **RE-SCHEDULED** for **Tuesday, March 9, 2010**, at **4:00 p.m.** at the United

States Courthouse in **Pikeville, Kentucky.**

This the 2nd day of February, 2010.

Signed By:

_Amul R. Thapar_

**United States District Judge**

25