UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| NELLO JAMES FRANCIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-240-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| ROBERT MARSHALL, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Cincinnati Reds sign an all-star pitcher to a four-year contract. He pitches well for the first two years, but after a shoulder injury he steadily declines. By the end of the fourth year he has the worst earned-run average in the National League.

A county in Kentucky hires an employee to perform maintenance in a park for a four-year term. Use of the park declines. At the end of the fourth year, the county decides that the employee's position is no longer necessary.

The Reds want to can the pitcher and the county does not want to rehire the park worker. How do these employers get rid of their employees? For the Reds, the answer is easy—simply do not sign the pitcher to a new contract. But for the county, the answer is more complicated. Because the county is a government employer, the Fourteenth Amendment's Due Process Clause comes into play in its employment decisions. In some cases, the county must provide the employee with a hearing and an opportunity to be heard before it decides not to rehire him.

When does a county owe an employee such a hearing? That is the question that this case presents.

The plaintiff, Nello Francis, brought this action after Floyd County, Kentucky, did not rehire him as a park worker. Francis sued Robert Marshall—the judge executive of Floyd County—and the Floyd County Fiscal Court. The Court previously dismissed most of Francis's claims on February 2, 2010. Francis subsequently amended his complaint to add a due process claim. The parties' cross-motions for summary judgment are currently before the Court. R. 50, 51.

## BACKGROUND

This Court's memorandum opinion and order entered on February 2, 2010, contains a thorough factual background of this case. *See* R. 38. A complete re-hashing here is not necessary. These are the highlights.

Francis started as a park worker for Floyd County in 1999. Floyd County employs all of its personnel for four-year periods coinciding with the term of the county's judge executive. A resolution passed by the judge executive and the fiscal court re-appointed Francis and other county workers to their positions effective January 1, 2003. R. 50, Attach. 3 at 1. The resolution stated that Francis and the other county employees were "being appointed at will to serve for an indefinite period of time, but not to exceed a four year period." *Id.* By the terms of this resolution, Francis's appointment to his position expired on December 31, 2006.

The citizens of Floyd County elected defendant Marshall as the new judge executive in late 2006. After the election, Marshall reviewed all Floyd County personnel positions. He concluded that Francis's position was unnecessary and should not be re-funded. Marshall

2

informed Francis in mid-December 2006 that he would not be re-hired for a new four-year period starting on January 1, 2007. At the stroke of midnight on December 31, 2006, all Floyd County employees lost their jobs. Marshall called a special meeting of the fiscal court the very next day, January 1, 2007, during which the county re-hired most of its employees. Francis was the only full-time park worker who was not re-hired. Francis did not receive a hearing or other opportunity to contest the county's decision not to re-hire him.

Francis filed his initial complaint against both Marshall and the fiscal court in December 2007. That complaint asserted a number of different claims under federal and state law, including unlawful political patronage dismissal, conspiracy, age discrimination, wage and hour violations, and wrongful discharge. R. 1. On cross-motions for summary judgment, the Court dismissed all of these claims except the claim for wrongful discharge against Marshall in his individual capacity. R. 38. The Court subsequently granted Francis leave to file an amended complaint asserting this lone remaining claim and adding a due process claim. R. 47. Hewing to the Court's order, Francis's amended complaint reiterated his claim for wrongful discharge under state law and added a claim that his termination violated his rights to substantive and procedural due process under the United States and Kentucky Constitutions. R. 48. Following a period of discovery, the defendants filed a motion for summary judgment as to both of the claims in Francis's amended complaint. R. 50. Francis filed a partial motion for summary judgment as to his due process claim. R. 51.

## DISCUSSION

Francis has just two claims remaining: (1) Marshall and the Floyd County Fiscal Court violated his due process rights under the United States and Kentucky Constitutions by terminating his employment without providing him notice and an opportunity to be heard, and (2) Marshall, in his individual capacity, violated state law by discharging him because of his support of a political candidate. Viewing all of the evidence in the light most favorable to Francis, the record lacks sufficient evidence from which a reasonable jury could find in Francis's favor on his due process claim. Accordingly, the defendants' motion for summary judgment as to this claim will be granted, and Francis's motion for summary judgment will be denied. With all federal issues gone, the Court will decline to exercise jurisdiction over Francis's lone remaining state law claim. Therefore, that claim will be dismissed without prejudice.

**I.  Summary Judgment Standard**

The standard by which the Court evaluates motions for summary judgment is familiar. Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to prevail, the moving party must "identify[] those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and establish that it is entitled to judgment as a matter of law. For the defendants to prevail, they must demonstrate that no reasonable jury could find for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To survive a motion for summary judgment

4

the plaintiff must provide sufficient evidence for "reasonable jurors [to] find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* A mere "scintilla" of evidence is not enough. *Id.*

In conducting this inquiry, the Court must keep two important rules in mind. First, the Court must view the evidence in the light most favorable to the non-moving party. *See Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). This means that the Court must draw all inferences in favor of the non-moving party. *Id.* Second, only *genuine* disputes about *material* facts will prevent the Court from granting summary judgment. Neither genuine disputes about ancillary facts nor phony disputes about material facts will stand in the way of summary judgment. While the parties squabble back and forth in their pleadings about various factual questions, the Court will ignore disputes that are not material to Francis's claims. With this standard and these rules in mind, the Court turns first to Francis's due process claims.

**II.   Due Process**

Francis claims that the defendants violated his substantive and procedural due process rights under the United States and Kentucky Constitutions. Francis's substantive due process claim lacks merit as a matter of law. The Sixth Circuit has held that "a claim by a public employee for improper discharge from employment cannot be brought under . . . substantive due process." *See Holthaus v. Bd. of Educ.*, 986 F.2d 1044, 1046 (6th Cir. 1993) (citing *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992)). Therefore, only Francis's procedural due process claim remains. And although Francis points to both the Kentucky and

5

the United States Constitutions, Kentucky courts interpret the state constitution's due process guarantee in a way that mirrors the Federal Constitution. *See Romero v. Admin. Office of Courts*, 157 S.W.3d 638, 640-41 (Ky. 2005) (analyzing due process rights under Kentucky and United States Constitutions using the same body of federal case law). Neither party has directed the Court to any authority indicating that Kentucky courts interpret the state constitutional provision at variance with federal due process standards. Therefore, the Court need only determine whether the defendants violated Francis's right to procedural due process under the United States Constitution.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. As the text makes clear, the threshold inquiry is whether Floyd County has deprived Francis of "life, liberty, or property." Francis's claim implicates neither his life nor his liberty. Property is the only possible candidate. Therefore, his claim boils down to this question: Did Francis have a property interest in continued employment with Floyd County? If he did, the Constitution guarantees him due process—at a minimum notice and an opportunity to be heard—prior to the county's decision not to rehire him. *See Williams v. Kentucky*, 24 F.3d 1526, 1538-39 (6th Cir. 1994) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Absent a property interest, however, Francis "was not entitled to any pre-deprivation process whatsoever." *Bailey*, 106 F.3d at 141.

A job is not something that one normally considers to be "property." Nevertheless, a government worker may have a property interest in his job in certain circumstances. *See Bd. of*

*Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77 (1972) (collecting cases). Not every government job is property. Only those jobs to which government workers have "a legitimate claim of entitlement" count as property. *Id.* at 577. Neither a "unilateral expectation" nor an "abstract need or desire" for continued employment are enough. Rather, a government worker only has a property interest in his job if "existing rules or understandings that stem from an independent source such as state law" clearly entitle him to continued employment. *Id.*; *see also Matulin v. Village of Lodi*, 862 F.2d 609, 615 (6th Cir. 1988) ("Property interests are not created by the federal Constitution, but from independent sources, often state law."). Thus, to establish that he had a property interest in his job as a Floyd County park worker, Francis must "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Bailey*, 106 F.3d at 141. Francis has not done so.

As Francis concedes, his "position [was] not afforded statutory protections." R. 57 at 5. Francis held his job pursuant only to a fiscal court resolution. Under Kentucky law, the county judge executive has the authority to "appoint, supervise, suspend, and remove county personnel" with the approval of the fiscal court. KY. REV. STAT. ANN. § 67.710(7). Marshall's predecessor as judge executive appointed all county employees, including Francis, to their positions effective January 1, 2003. *See* R. 50, Attach. 3. The resolution making the appointments specifically provided that the employees were "appointed at will to serve for an indefinite period of time, *but not to exceed a four year period.*" *Id.* (emphasis added). Under the terms of the resolution, all Floyd County employees lost their jobs at midnight on December 31, 2006. Most of the

7

employees were reappointed to their same positions in a new fiscal court resolution passed at a special meeting on January 1, 2007. R. 38 at 3. Francis was not re-appointed. *Id.*

Because Francis held his job pursuant to the fiscal court resolution, the terms of that resolution are the most important indicator of whether Francis had a property interest in his job. At most, the resolution entitled Francis to continue his employment until December 31, 2006. But it provided absolutely no entitlement to employment beyond that date. In this sense, Francis's employment relationship with Floyd County is similar to the employment relationship that the Supreme Court considered in *Board of Regents v. Roth*. 408 U.S. 564 (1972). Mr. Roth was appointed an assistant professor of political science at a public university in Wisconsin. *Id.* at 566. His appointment specified that his employment began on September 1, 1968, and ended on June 30, 1969. *Id.* The university declined to renew Roth's contract after his first year. *Id.* Roth argued that the university violated his due process rights because it refused to grant him a hearing concerning its decision not to renew his employment contract. *Id.* at 569. The Supreme Court rejected this claim. Because neither "the terms of [his] appointment" nor "any state statute or University rule or policy" gave Roth any legitimate claim to be rehired, he did not have a property interest in continued employment. *Id.* at 578. Like *Roth*, Francis's appointment to his position in the county parks department was for a limited duration. Both jobs ended on a date certain. And also like *Roth*, neither the appointment resolution nor any other provision of state or local law gave Francis any legitimate entitlement to be rehired.

This is not to say that property interests in future employment can *only* be created by the literal terms of an employment contract or appointment. The Supreme Court recognized in *Perry*

*v. Sindermann* that existing policies, practices, or understandings can form the basis of a "common law" or "de facto" tenure system. 408 U.S. 593, 601-03 (1972). Analogous to an implied contract, de facto tenure can provide an employee with a legitimate entitlement to continued employment even where the literal terms of his contract have no such guarantee. *Id.*; *see also Edinger v. Bd. of Regents of Morehead State Univ.*, 906 F.2d 1136, 1140 (6th Cir. 1990). The plaintiff in *Sindermann* had been a professor in the Texas public university system for a decade and had been employed at Odessa Junior College for four years under a series of one-year contracts. 408 U.S. at 594. Neither the contracts nor any provision of state law explicitly entitled Sindermann to continued employment, but Odessa Junior College's faculty guide stated that the administration "wishe[d each] faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory." *Id.* at 600. The Texas public university system also promulgated similar guidelines. The Supreme Court held that these "rules and understandings," which were "promulgated and fostered by state officials," *may* justify a "legitimate claim of entitlement to continued employment." *Id.* 602. The Court remanded the case so that the lower court could make this determination in the first instance.

As *Sindermann* makes clear, establishing a de facto entitlement to continued employment is a lofty evidentiary burden. Francis has not even come close. At most, Francis can point to only two facts in support of a de facto entitlement to continued employment—the county had rehired him once before in 2003 and the county rehired most of the other county workers. Neither is sufficient. Simply because a county rehires an employee once does not give that employee a de facto entitlement to be rehired again. *See Roberts v. Ward*, 468 F.3d 963, 970

(6th Cir. 2006). Nor does the fact that Floyd County rehired most employees entitle *all* employees to be rehired. It was also the case in *Roth* that the state university rehired most teachers who were employed on a year-to-year contract basis. *Id.* at 578 n.16. That fact alone was not enough to create a property interest in *Roth* and neither is it enough to create a property interest here. What made the difference in *Sindermann* were the policy statements, promulgated by state officials, that encouraged workers to feel secure in their jobs. Francis has not identified any such policy statements, whether oral or written, that would provide him with a legitimate expectation of continued employment. Accordingly, Francis has not provided sufficient evidence for a reasonable jury to find that Floyd County guaranteed him re-employment on a de facto basis.

Because neither the appointment resolution nor any informal practices, policies, or understandings provide Francis with any legitimate entitlement to continued employment, Francis grasps at other provisions of state and local law. Francis's best hope is Section 120.6 of the Floyd County Administrative Code, which provides that "[b]efore any appointed personnel . . . may be dismissed," that person must receive a written list of the reasons for the dismissal and an opportunity to contest the dismissal in a hearing. *See* R. 51, Attach. 9 at 7-8. Although promising for Francis at first glance, this section only applies when "appointed personnel" are "dismissed." As of January 1, 2007, Francis was no longer an "appointed" employee. Therefore, he was not "dismissed"; he was simply not rehired. If Francis had been terminated prior to December 31, 2006—before the end of his job appointment—he would have been dismissed and

Section 120.6 would have entitled him to notice of the reasons for the dismissal and a hearing. But, by its plain terms, Section 120.6 simply does not apply to Francis's situation.

Finding no refuge in Section 120.6, Francis reaches out to other state and county laws in the hopes of establishing an entitlement to continued employment. All of these efforts are in vain. Francis argues that the fiscal court's meeting on January 1, 2007, violated Kentucky's Open Meetings Act, KY. REV. STAT. ANN. § 61.800 *et seq.*, which requires advance public notice of such meetings. The parties dispute whether the defendants provided sufficient notice of the meeting. *See* R. 51, Attach. 1 at 2; R. 52 at 3. But whether the defendants complied with the Open Meetings Act is simply irrelevant to Francis's due process claim. Generally requiring government bodies to provide advance notice of special meetings in no way affords Francis a legitimate expectation of continued employment. Because notice of the meeting is not material to Francis's due process claim, the factual dispute regarding the notice will not prevent summary judgment.

Francis next argues that, if the defendants "abolished" his position, they failed to comply with Sections 130.2 to 130.5 of the Floyd County Administrative Code. Those sections provide that the judge executive "may create, abolish, or combine any County Department, Special District, or agency . . . provided that he shall first submit plans for such reorganization to the fiscal court." *See* R. 51, Attach. 9 at 8. By their plain terms, these provisions do not apply to the termination of a single position. Francis is not a "County Department, Special District, or agency" unto himself. Therefore, abolishing his one job did not trigger the code's requirement that plans for the reorganization be submitted to the fiscal court in advance.

Finally, Francis argues that Marshall lacked the authority to abolish his position. Francis directs the Court to KY. REV. STAT. ANN. § 67.710, which enumerates the powers and duties of county judge executives. Francis notes that the statute authorizes the judge executive to "appoint, supervise, suspend, and remove county personnel" with the approval of the fiscal court, but nowhere gives him the power to abolish county positions. R. 51, Attach. 1 at 4. From this, Francis asks the Court to conclude that Marshall lacked the authority to abolish his position. This argument goes nowhere. Section 67.710 explicitly states that the judge executive's powers and responsibilities "include, *but are not limited to*" those listed in the statute. Simply because the statute does not specifically list the power to abolish positions as one of a judge executive's authorities does not mean that judge executives are prohibited from doing so. The construction Francis urges would leave counties crippled and unable to function. Think of it. Counties would be required to keep a position, once created, forever. Indeed, under Francis's interpretation, counties would not be allowed to terminate outmoded positions such as telegraph operators or street lamp lighters. Such an interpretation is erroneous because it would truly make government dysfunctional.

Ultimately, Francis has failed to identify anything in the appointment resolution, state or county law, or informal practices and understandings that provides him with a legitimate entitlement to employment beyond December 31, 2006. Undoubtedly, Francis had a strong *personal* interest in being rehired. But a mere "unilateral expectation" or "abstract need or desire" is not enough. *Roth*, 408 U.S. at 577. Floyd County chose to hire its workforce for four-year periods. Nothing in the Constitution prohibits the county from making this choice. Indeed,

to punish the county here "would amount to an unwarranted expansion of federal power into matters of purely local concern." *Chaney v. Village of Potsdam*, 105 F. App'x 18, 23 (6th Cir. 2004). Francis did not have a cognizable property interest in continued employment with the county parks department. Accordingly, the Constitution did not entitle him "to any pre-deprivation process whatsoever." *Bailey*, 106 F.3d at 141.

There is one important caveat to the Court's holding. Although Francis did not have a legitimate entitlement to continued employment beyond January 1, 2007, that does not mean that the county could refuse to rehire him for *any* reason. It would still be out-of-bounds for the county to refuse to rehire Francis because of his race, his religion, his political beliefs, or in retaliation for the exercise of his First Amendment rights. *See Branti v. Finkel*, 445 U.S. 507, 512 n.6 (1980) ("[T]he lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs."); *Orr v. Trinter*, 444 F.2d 128, 134 (6th Cir. 1971) ("[I]t is no longer open to debate that plaintiff would be entitled to relief if the board had refused to rehire him because he had exercised his rights as guaranteed by the free speech clause of the First Amendment . . . ."). In his first complaint, Francis alleged that the defendants refused to rehire him because of his political affiliation. The Court granted the defendants summary judgment on this claim because "Francis did not present any evidence to show that political affiliation was a substantial or motivating factor for" the decision not to rehire him. R. 38 at 12. Therefore, there are no remaining claims that the defendants refused to rehire Francis for an unconstitutional reason. His claim is only that it violated his due process rights for the defendants not to provide him with a hearing before

refusing to rehire him. That claim fails. Accordingly, the Court will grant summary judgment on the due process claim in favor of the defendants and deny Francis's partial motion for summary judgment.

## II. State Law Wrongful Discharge

All of the federal issues in this case are now gone. The last man standing is Francis's state law claim for wrongful discharge. Francis claims that Marshall violated state public policy by discharging him because he supported a political candidate who ran against Marshall's favored candidate. Although the Court technically still has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(a), the Court should only retain jurisdiction if the "interests of judicial economy and the avoidance of multiplicity of litigation" outweigh the need to avoid "needlessly deciding state law issues." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 211 (6th Cir. 2004). There is a strong presumption in favor of dismissal. The general rule is that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Id.* at 210 (internal quotation marks omitted). The balance in this case leans heavily against exercising supplemental jurisdiction. The remaining state law claim is complex, it involves state public policy that Kentucky courts have apparently not yet authoritatively interpreted, and the parties have provided the Court with virtually no legal guidance. Accordingly, the better course is for the Court to dismiss the claim and allow the Kentucky courts to construe state public policy in the first instance.

The need to avoid unnecessarily deciding state law issues is particularly acute where the those issues are novel and complex. The supplemental jurisdiction statute explicitly provides

that district courts "may decline to exercise supplemental jurisdiction over" claims that "raise[] a novel or complex issue of State law." 28 U.S.C. § 1367. And Francis's claim is a real humdinger. Francis claims that Kentucky has a "well-defined public policy" that government employees should be free to support political candidates of their choice without fear of reprisal by their employers. R. 48 ¶ 11. Francis asks the Court to discern Kentucky public policy concerning political influence in government employment and then determine whether Marshall violated that public policy in this case. Ruling on this claim would require the Court to answer a host of difficult legal questions. What role, if any, can politics play in the hiring and firing of government employees? Is the answer to this question the same for all government employees, or is there a sliding scale depending on the level of seniority or policy-making authority? Are the rules for county judge executives the same as the rules for the governor? If so, why? If not, why not?

Federal courts are not usually in the business of figuring out state public policy by answering questions like these. That is especially the case where, as here, the state courts have not yet authoritatively announced their own public policy. The Sixth Circuit has often affirmed district courts' decisions not to exercise supplemental jurisdiction over complex state law claims where the state courts have not authoritatively addressed the question. *See, e.g.*, *Beechy v. Cent. Mich. Dist. Health Dept.*, 274 F. App'x 481, 482 (6th Cir. 2008) (district court refused to exercise supplemental jurisdiction over state law claim because of "the paucity of decisions interpreting" the applicable state statute); *Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997) (district court refused to exercise supplemental jurisdiction over claim that statute violated the

state constitution). Although Francis's complaint states that the Kentucky public policy is "well-defined," Francis concedes that "little case law exists on [the] subject in Kentucky." He instead refers the Court to federal political patronage cases. *See* R. 57 at 5-6. But these federal cases shed no light on state public policy. They are merely duplicative of Francis's earlier political patronage claims under the Federal Constitution, which the Court has already dismissed. *See* R. 38 at 9-14. Essentially, Francis asks the Court to determine a complicated area of Kentucky's public policy that, according to Francis, Kentucky courts have barely addressed themselves. And Francis asks the Court to do so without any guidance in the parties' briefs about the direction that Kentucky courts would likely take on the issue. That is not this Court's proper role.

The Court recognizes that some concerns of judicial economy counsel in favor of retaining jurisdiction over this state law claim. Indeed, when the Court considered the first round of motions for summary judgment and dismissed all of Francis's federal claims, the Court retained supplemental jurisdiction over the wrongful discharge claim for reasons of judicial economy. R. 38 at 23-24. At that time, it was clear to the Court that this action was still ongoing. The Court strongly contemplated granting Francis the opportunity to amend his complaint to assert a federal due process claim, which the Court did in short order. But that was then and this is now. As the Court has ordered, Francis will not have any more opportunities to add additional federal claims. *See* R. 47 at 1-2 ("After the amended complaint is filed, the Court will not permit any further amendments to the pleadings."). Therefore, the Court is faced with the prospect of resolving this complicated issue of state public policy alone. The Court declines the invitation. The appropriate course is for the Court to "allow the [Kentucky] courts to decide

the purely state law issues." *Sundquist*, 106 F.3d at 708. Accordingly, Francis's state law claim for wrongful discharge will be dismissed without prejudice.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1) The defendants' motion for summary judgment, R. 50, is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Francis's due process claims, and it is **DENIED** as to Francis's state law wrongful discharge claim.

(2) Francis's motion for partial summary judgment, R. 51, is **DENIED**.

(3) Francis's state law claim for wrongful discharge is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. The Court declines to exercise supplemental jurisdiction over the claim.

(4) This matter shall be **STRICKEN** from the Court's active docket.

This the 14th day of October, 2010.



Signed By:
*Amul R. Thapar* AT
United States District Judge